UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JON HOUSER,<br><br>    Plaintiff,<br><br>vs.<br><br>CORIZON, SCOTT LOSSMANN, GARTH GULICK, CATHERINE WHINNERY, GLEN BABICH, and MARK SPELICH,<br><br>    Defendants. | Case No. 1:13-cv-00006-EJL<br><br>**MEMORANDUM DECISION AND ORDER** |

    Plaintiff, a prisoner in the custody of the Idaho Department of Correction (IDOC), is represented by counsel in this civil rights action. Plaintiff alleges that Defendants have violated his Eighth Amendment rights to be free from cruel and unusual punishment by their deliberate indifference and failure to provide adequate healthcare with respect to Plaintiff's left knee and other medical issues. Now pending before the court is a Motion to Dismiss for failure to exhaust administrative remedies filed by Defendants Glen Babich, Corizon, Inc, Scott Lossman, Catherine Whinnery and Garth Gulick (Dkt. 22). Defendant Spelich has joined in the motion (Dkt. 27).

**MEMORANDUM DECISION AND ORDER - 1**

Having carefully reviewed the record, the Court finds that the parties have adequately presented the facts and legal arguments in the briefs and record and that the decisional process would not be significantly aided by oral arguments. Therefore, the Court will decide the matter on the written motions, briefs and record. D. Idaho L. Civ. R. 7.1(d).

## BACKGROUND

Plaintiff filed this action on January 4, 2013 alleging that Defendants were deliberately indifferent in responding to his medical needs. The Court reviewed the Complaint pursuant to 28 U.S.C. §§ 1915 and 1915A and allowed Plaintiff to proceed on his Eighth Amendment claims against Defendants. (Initial Review Order, Dkt. 4.)

Defendants have moved to dismiss for failure to exhaust administrative remedies.

## STANDARD OF LAW

1.  **Summary Judgment**

Summary judgment is appropriate where a party can show that, as to a particular claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment rule "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is not "a disfavored procedural shortcut," but is instead the "principal tool[] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327.

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Rather, there must be no *genuine* dispute as to any *material* fact in order for a case to survive summary judgment. Material facts are those "that might affect the outcome of the suit." *Id.* at 248. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The moving party is entitled to summary judgment if that party shows that each material fact cannot be disputed. To show that the material facts are not in dispute, a party may cite to particular parts of materials in the record, or show that the adverse party is unable to produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A) & (B). The Court must consider "the cited materials," but it may also consider "other materials in the record." Fed. R. Civ. P. 56(c)(3). The Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (internal quotation marks omitted). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *So. Ca. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

If the moving party meets its initial responsibility, then the burden shifts to the opposing party to establish that a genuine dispute as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The

**MEMORANDUM DECISION AND ORDER - 3**

existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

Material used to support or dispute a fact must be "presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).[1] Affidavits or declarations submitted in support of or in opposition to a motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

If a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the Court may consider that fact to be undisputed. Fed. R. Civ. P. 56(e)(2). The Court may grant summary judgment for the moving party "if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3). The Court may also grant summary judgment to a non-moving party, on a ground not raised by either party, or sua sponte provided that the parties are given notice and a reasonable opportunity to respond. Fed. R. Civ. P. 56(f).

---

[1] In determining admissibility for summary judgment purposes, it is the content of the evidence rather than its form that must be considered. *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003). If the contents of the evidence could be presented in an admissible form at trial, those contents may be considered on summary judgment even if the evidence itself is hearsay. *Id.* (affirming consideration of hearsay contents of plaintiff's diary on summary judgment because at trial, plaintiff's testimony would not be hearsay).

**MEMORANDUM DECISION AND ORDER - 4**

The Court does not determine the credibility of affiants or weigh the evidence set forth by the non-moving party. Although all reasonable inferences which can be drawn from the evidence must be drawn in a light most favorable to the non-moving party, *T.W. Elec. Serv., Inc.*, 809 F.2d at 630-31, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

2. **Exhaustion of Administrative Remedies**

Pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"),[2] prisoners are required to exhaust all available administrative remedies within the prison system before they can include the claims in a new or ongoing civil rights lawsuit challenging the conditions of their confinement. 42 U.S.C. § 1997e(a); *Cano v. Taylor*, 739 F.3d 1214, 1220-21 (9th Cir. 2014) (a claim may be exhausted prior to filing suit or during suit, so long as exhaustion was completed before the first time the prisoner sought to include the claim in the suit). "Proper" exhaustion of administrative remedies is required, meaning that the prisoner must comply "with [the prison's] deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

---

[2] Pub. L. No. 104-134, 110 Stat. 1321, *as amended*, 42 U.S.C. § 1997e, *et seq.*

**MEMORANDUM DECISION AND ORDER - 5**

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). The exhaustion requirement is based on the important policy concern that prison officials should have "an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Id.* at 204. Once in court, defendants have the right to bring motions addressing exhaustion of administrative remedies at the very beginning of litigation, and "disputed factual questions relevant to exhaustion[,] should be decided at that time. *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014) (en banc).

Failure to exhaust is an affirmative defense that may be asserted in a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim only if the prisoner's failure to exhaust is clear from the face of the complaint and any public records subject to judicial notice. *Albino*, 747 F.3d at 1166. When either party relies on evidence beyond the pleadings and public records, the exhaustion issue should be brought as, or converted into, a motion for summary judgment under Rule 56. *Id.* at 1170. "If the record is sufficiently developed to permit the trial court to consider summary judgment, and if the court finds that when viewing the evidence in the light most favorable to a moving party the movant has not shown a genuine dispute of fact on the issue of exhaustion," the Court may enter summary judgment for either the moving or the nonmoving party (on the court's own motion). *Id.* at 1176; *see* Fed. R. Civ. P. 56(f) ("After giving notice and a reasonable time to respond, the court may . . . grant summary judgment for a nonmovant.")

Rule 56 prohibits the courts from resolving genuine disputes as to material facts on summary judgment. If a genuine dispute exists as to material facts relating to an exhaustion defense, the motion should be denied, and the "disputed factual questions relevant to exhaustion should be decided by the judge, in the same manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue." *Id.* at 1170-71. *See also McNutt v. General Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 184 (1936) (stating that the court may "inquire into the facts as they really exist") (internal quotation marks omitted); *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1139 (9th Cir. 2004) (stating that the court may "hold[] an evidentiary hearing on the disputed facts"); *Lake v. Lake*, 817 F.2d 1416, 1420 (9th Cir. 1987) (stating that the court "has the discretion to take evidence at a preliminary hearing in order to resolve any questions of credibility or fact" and that the plaintiff must establish the facts "by a preponderance of the evidence, just as he would have to do at trial") (internal quotation marks omitted). The issue of "[e]xhaustion should be decided, if feasible, before reaching the merits of a prisoner's claim." *Albino*, 747 F.3d at 1170.

The defendant bears the ultimate burden of proving failure to exhaust. *See Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005). If the defendant initially shows that (1) an available administrative remedy existed and (2) the prisoner failed to exhaust that remedy, then the burden of production shifts to the plaintiff to bring forth evidence "showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172.

**MEMORANDUM DECISION AND ORDER - 7**

Confusing or contradictory information given to a prisoner "informs [the] determination of whether relief was, as a practical matter, 'available.'" *Brown*, 422 F.3d at 937. Administrative remedies will be deemed unavailable and exhaustion excused if the inmate had no way of knowing the prison's grievance procedure, if the prison improperly processed an inmate's grievance, if prison officials misinformed an inmate regarding grievance procedures, if the inmate "did not have access to the necessary grievance forms within the prison's time limits for filing the grievance," or if prison staff took any other similar actions that interfered with an inmate's efforts to exhaust. *Albino*, 747 F.3d at 1173.

If a prisoner has failed to exhaust available administrative remedies, the appropriate remedy is dismissal without prejudice. *Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003), *overruled in part on other grounds by Albino*, 747 F.3d 1162.

## DISCUSSION

**1.     IDOC's Grievance Procedure**

The IDOC's grievance process consists of three stages.  First, any inmate with a concern is required to seek an information resolution by filling out an Offender Concern Form, addressed to appropriate staff member.  (Whittington Aff., ¶¶ 4-5 (Dkt. 22-2.))  If the issue cannot be resolved informally through the use of a Concern Form, the inmate must then file a Grievance Form.  (*Id*. at ¶ 6.)

A Grievance Form must be submitted within 30 days of the incident giving rise to the grievance. When submitting a Grievance Form, the inmate must attach a copy of the Offender Concern Form, showing the inmate's attempt to settle the issue informally. Grievances must contain "specific information including nature of the complaint, dates, places, and names," and only one issue may be raised in each grievance. (*Id*. at ¶¶ 6-7.) When the Grievance Coordinator receives an inmate grievance, she enters the grievance information "into the Corrections Integrated System (CIS)," an electronic database used to track inmate grievances. (*Id*.) The Grievance Coordinator then assigns the grievance "to the staff member most capable of responding to and, if appropriate, resolving the issue." (*Id*.) That staff member responds to the grievance and returns it to the Grievance Coordinator. The Grievance Coordinator then forwards the grievance to a "reviewing authority," typically a deputy warden. (*Id*.)

The reviewing authority returns the grievance to the Grievance Coordinator, who logs the response into the database and sends the completed grievance back to the inmate. (*Id*.) When the grievance involves a medical issue, the grievance is routed through medical staff who are employed by the health care contractor and may include a health services administrator. (*Id*. ¶ 8.)

If the decision on an inmate's grievance is not satisfactory to the inmate, the inmate may appeal that decision. (*Id*. at ¶ 9.) The facility head is the person who usually decides an inmate's grievance appeal. If it is a medical grievance, the facility's healthcare service administrator is the reviewing authority and the health authority is the appellate authority.

**MEMORANDUM DECISION AND ORDER - 9**

(*Id.* at ¶ 10.) This "appellate authority" must review the appeal within 16 days. After the appeal is decided, the Grievance Coordinator returns the completed appeal form to the inmate. (*Id.*)

Not until the completion of all three of these steps - Concern Form, Grievance Form, and grievance appeal - is the grievance process exhausted. (*Id.* at ¶ 11.)

2. **Plaintiff's Claims**

The Court will group Plaintiffs various claims together as many are related and discuss whether each "group" was adequately exhausted. Plaintiff has conceded that Count 5 was not exhausted and Defendants do not challenge Count 8. (*See* Dkt. 28, p. 6 and Dkt. 22-1, pp. 10-15.) Accordingly, Count 5 is dismissed and Plaintiff may proceed with Count 8.

    A.    **Claims Against Corizon (Counts 1, 2)**

Count 1 alleges that Defendant Corizon has "a policy and custom in delaying and denying prisoners medical treatment . . . not hiring qualified medical staff . . . and prescribing medication instead of surgery" in order to save costs and make a profit. (Compl., ¶ 80.) Count 2 alleges that Corizon has a custom of "not hiring qualified staff to work at ISCI . . . [which] resulted in [Plaintiff's] x-ray reports being concealed for approximately ten (10) months." (*Id.* at ¶ 81.)

Grievance II 120001073 alleged that Corizon stalls and delays treatment. This allegation was made in regard to Plaintiff's request for knee replacement surgery and fully exhausted on August 29, 2012. (Whittington Aff., Ex. H, (Dkt. 22-9.))

**MEMORANDUM DECISION AND ORDER - 10**

Defendants claim this grievance did not fully exhaust Plaintiff's claims against Corzion because it raised more than one specific issue which is contrary to IDOC policy. They contend the main issue in this grievance was denial of medication.

The Court disagrees with Defendants' characterization of this grievance. Plaintiff is complaining that Corizon has delayed medical treatment with regard to his knee and that Corizon stalls treatment for inmates with major "expensive needs." The Court finds that this grievance adequately exhausted Plaintiff's administrative remedies as to the allegations in Count 1.

While Count 2 makes references to his x-rays specifically, the Court finds it is part and parcel with Count 1. Count 2 expands upon his allegations in Count 1 and includes an example of Corizon's delay in medical treatment, the "concealment" of his x-rays. Although none of the grievances mention Plaintiff's x-rays specifically, the Court finds grievance II 120001073 suffices to exhaust Plaintiff's allegations in Count 2. A grievance is not the equivalent of a "summons and complaint that initiates adversarial litigation," *see Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004), and it need not "contain every fact necessary to prove each element of an eventual legal claim," *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009.) It is instead sufficient if the prisoner brings a problem to the prison's attention in compliance with the prison's administrative rules such that officials can understand the nature of the complaint and have the opportunity to fix it. *See id.* The Court finds Plaintiff properly brought the delay in medical treatment to the attention of prison officials.

**MEMORANDUM DECISION AND ORDER - 11**

B. **Claims Re: Treatment of Left Knee Prior to Initial Surgery in April 2011 (Counts 3 and 6)**

Count 3 alleges that Defendants Gulick and Lossman failed to treat Plaintiff's severe left knee and feet pain, and atrophy. (Compl. ¶ 82.) It is not clear what time frame Plaintiff is referring to but for the purposes of this motion, the Court will assume this is for the treatment of his left knee prior to his surgery on April 14, 2011.

Count 6 alleges that Defendant Gulick and Lossman authorized, and Defendant Spelich performed, surgery on Plaintiff even though they knew his white and red cell counts were dangerously low and that he had previously had three staph infections. (Compl. ¶ 85.)

Grievance II 110001729 stated that Plaintiff has been "permanently crippled" through the negligence and poor thinking of CMS and Corizon, that he can "no longer walk unassisted or exercise" and that his mental and physical health deteriorates daily. Plaintiff mentions high risk situations and that the decisions of Lossman and Gulick have caused him injuries. (Dkt. 22-10.)

Defendants argue that because this grievance (the first ever filed concerning his knee) was not filed until November 30, 2011, his grievance was not timely as to any treatment of his knee until 30 days prior to the date that the grievance was filed, since IDOC policy requires that grievances be made within 30 days of the incident.

Courts have uniformly held that "the PLRA's exhaustion requirement is satisfied if prison officials decide a procedurally flawed grievance on the merits." *Hammett v.*

*Cofield*, 681 F.3d 945, 947 (8th Cir. 2012) (citing *Hill v. Curcione*, 657 F.3d 116, 125 (2d Cir. 2011); *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010); *Conyers v. Abitz*, 416 F.3d 580, 584 (7th Cir. 2005); *Ross v. Cnty. of Bernalillo*, 365 F.3d 1181, 1186 (10th Cir. 2004); *Camp v. Brennan*, 219 F.3d 279, 281 (3d Cir. 2000). The rationale for this rule is that "when a state treats a filing as timely and resolves it on the merits, . . . the grievance has served its function of alerting the state and inviting corrective action." *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004).

Jail officials did not deny Plaintiff's grievance as untimely. While it is true that Plaintiff did not include the date of his surgery in his grievance, it appears that the officials who responded were more than aware of his surgery, and presumably when it occurred. As way of example, the initial response to Plaintiff's grievance states that Plaintiff signed a consent form and understood there was risks with surgical intervention. The reviewing authority reiterated this. The reviewing officials could have denied Plaintiff's grievance as untimely if they were so inclined. Because they instead considered his grievance on its merits, Plaintiff has properly exhausted his administrative remedies with respect to these claims.

### C. Claims Re: Lack of Treatment for Plaintiff's Hepatitis C (Counts 4, 9)

In Count 4, Plaintiff alleges that Defendant Gulick has denied Plaintiff Hepatitis C treatment for eleven months. (Compl., ¶ 83.) Count 9 alleges that Defendants Gulick, Lossman, Whinnery, and Babich have refused to treat his Hepatitis C. (*Id*. at ¶ 86.)

In grievance II 120000989, Plaintiff stated he was forced to stop his antiviral meds, his "Hep C viras [*sic*] was not arrested" and that he has asked for new antiviral treatment which has been refused. He names Defendants Gulick, Lossman, Spelich and names Dr. Whinnery in the appeal. This grievance was fully exhausted on August 7, 2012.

Defendants argue that Plaintiff "never raised or identified any issue with an alleged eleven month delay in receiving Hepatitis C treatment." (Dkt. 22-1, p. 13.) In this grievance, Plaintiff clearly is seeking treatment for his Hepatitis C. While he does not state the exact timeframe that he has been denied treatment, that is not fatal to the exhaustion requirement. A plaintiff need not list every detail in a grievance that he may later include in a lawsuit. This grievance was fully exhausted as it relates to the relevant allegations regarding his Hepatitis C treatment in Counts 4 and 9.

### D. Claims Re: Treatment of MRSA Following Surgery (Count 7)

Following his April 14, 2011 surgery, Plaintiff contracted MRSA and in Count 7 he alleges that Defendants Gulick, Lossman and Spelich "failed to remove [Plaintiff] from the Hepatitis C treatment after the first MRSA outbreak..." (Compl., ¶ 86.) Defendants contend that because these allegations date back to Plaintiff's MRSA outbreaks in April and May 2011 and Plaintiff did not file any grievances within 30 days of those incidents, he did not properly grieve and exhaust this issue.

None of the grievances address the treatment of Plaintiff's MRSA after his April 14, 2011 surgery and the fact that he should have been removed from his Hepatitis C antiviral medication sooner so that the MRSA could be adequately treated. Plaintiff points to

**MEMORANDUM DECISION AND ORDER - 14**

grievance II 120000989, but that grievance deals with receiving Hepatitis C treatment after he was eventually taken off it for his MRSA treatment. He is seeking treatment for Hepatitis C, not grieving the delay or inadequate care for his MRSA outbreak. Plaintiff also points to an Offender Concern form dated August 11, 2012. There is no evidence that this grievance was fully exhausted and again, it discusses his Hepatitis C treatment, not his inadequate MRSA treatment as this claim alleges.

Plaintiff did not properly exhaust the allegations made in Count 7 and accordingly, that claim should be dismissed.

### E. Claims Against Spelich

Defendant Spelich joined in Defendants' motion to dismiss for failure to exhaust administrative remedies. (Dkt. 27.) In his supplemental brief, Plaintiff admitted that Defendant Spelich is not a "state actor" and argued that he cannot assert the PLRA as an affirmative defense.[3] (Dkt. 39, p. 6.) Defendant Spelich then moved to be dismissed on the basis that because Plaintiff only states 42 U.S.C. § 1983 claims, Plaintiff has not stated any cognizable claims against Spelich. (Dkt. 40.)

Because Plaintiff has not had the opportunity to respond to Defendant Spelich's request to be dismissed, the Court will deny Spelich's request without prejudice at this time, allowing him to raise the issue in proper form at a later date.

---

[3] Plaintiff also states in this brief that the claims against Spelich are medical malpractice claims, not constitutional claims. Spelich counters there is *no* mention of malpractice, only deliberate indifference in violation of the Eighth Amendment. Spelich appears correct in this assertion.

**MEMORANDUM DECISION AND ORDER - 15**

## CONCLUSION

The Court finds that Plaintiff adequately exhausted his claims on Counts 1, 2, 3, 4, 6 and 9. Defendants' main contentions with most of Plaintiff's grievances are either that they were not timely or he identified more than "one specific issue." Where prison officials overlook a prisoner's failure to comply with procedural requirements and address the grievance on its merits, exhaustion is satisfied. Additionally, when a prisoner is grieving a general issue, there is no need to name all the defendants in the grievance. In such an instance as inadequate medical care, it may be impossible or impracticable to name all the medical personnel involved. A grievance satisfies to exhaust a claim if it puts the prison on adequate notice of the problem for which the prisoner seeks redress. Plaintiff has done that with respect to these claims.

## ORDER

**IT IS HEREBY ORDERED:**

1) Defendants' Motion to Dismiss (Dkt. 22) is GRANTED IN PART and DENIED IN PART.

2) Counts 5 and 7 are dismissed without prejudice. Plaintiff may proceed on Counts 1, 2, 3, 4, 6, 8 and 9.

3) Defendant Spelich's Motion to Dismiss (Dkt. 40) is DENIED without prejudice.

4) Plaintiff's Motion to Conduct Discovery (Dkt. 28) is MOOT.



DATED: **August 27, 2014**

Honorable Edward J. Lodge
U. S. District Judge

**MEMORANDUM DECISION AND ORDER - 17**