UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JON HOUSER, | Case No. 1:13-CV-0006-EJL-REB |
| Plaintiff, | |
| | **ORDER ON REPORT AND** |
| v. | **RECOMMENDATION** |
| | |
| CORIZON, et al., | |
| Defendants. | |

Chief United States Magistrate Judge Ronald E. Bush issued a Report and Recommendation in this matter. (Dkt.83.) Pursuant to 28 U.S.C. § 636(b)(1), the parties had fourteen days in which to file written objections to the Report and Recommendation. Defendant Scott Lossman filed an objection to the Report and Recommendation. Plaintiff Jon Houser filed a response to the objection and the matter is now ripe for this Court's review.

**DISCUSSION**

Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court "may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge." Where the parties object to a report and recommendation, this Court "shall make a de novo determination of those portions of the report which objection is made." *Id.* Where, however, no objections are filed the district court need not conduct a *de novo* review. In

**ORDER - 1**

*United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003), the court interpreted

the requirements of 28 U.S.C. § 636(b)(1)(C):

> The statute [28 U.S.C. § 636(b)(1)(C)] makes it clear that the district judge
> must review the magistrate judge's findings and recommendations de novo if
> objection is made, but not otherwise. As the *Peretz* Court instructed, "to the
> extent de novo review is required to satisfy Article III concerns, it need not
> be exercised unless requested by the parties." *Peretz*, 501 U.S. at 939
> (internal citation omitted). Neither the Constitution nor the statute requires a
> district judge to review, de novo, findings and recommendations that the
> parties themselves accept as correct. *See Ciapponi*, 77 F.3d at 1251 ("Absent
> an objection or request for review by the defendant, the district court was not
> required to engage in any more formal review of the plea proceeding."); *see
> also Peretz*, 501 U.S. at 937-39 (clarifying that de novo review not required
> for Article III purposes unless requested by the parties) . . . .

*See also Wang v. Masaitis*, 416 F.3d 993, 1000 & n.13 (9th Cir. 2005). Furthermore, to the

extent that no objections are made, arguments to the contrary are waived. *See* Fed. R. Civ.

P. 72; 28 U.S.C. § 636(b)(1) (objections are waived if they are not filed within fourteen

days of service of the Report and Recommendation). "When no timely objection is filed,

the Court need only satisfy itself that there is no clear error on the face of the record in

order to accept the recommendation." Advisory Committee Notes to Fed. R. Civ. P. 72

(citing *Campbell v. United States Dist. Court*, 501 F.2d 196, 206 (9th Cir.1974)).

 In this case, Judge Bush recommended granting summary judgment as to

Defendants Corizon and Garth Gulick, but denying summary judgment as to Defendant Dr.

Lossman. Since Plaintiff did not object to the recommendation to grant summary

judgment, the Court will not conduct a *de novo* review of that portion of the Report and

Recommendation. The Court has, however, reviewed the Report and Recommendation as

**ORDER - 2**

to these Defendants as well as the record in this matter and finds no clear error on the face of the record for the recommendation of granting summary judgment.

The Court will review *de novo* the recommendation to deny summary judgment on the claims in Count 3 against Dr. Lossman. For the reasons set forth below, the Court finds the Report and Recommendation to be well-founded in the law based on the facts of this particular case and this Court is in agreement with the same.

## FACTUAL BACKGROUND

The Court incorporates the factual background as set forth in the Report and Recommendation, pp. 1-3.

This is an Eighth Amendment deliberate indifference case. The Plaintiff, Jon Houser, is a man in his late fifties who suffers from Hepatitis C as well as arthritis in his left knee. At the pertinent time periods, Houser was incarcerated at the Idaho State Correctional Institution ("ISCI"). The Defendants are Corizon Medical Services (hereafter "Corizon") and two Corizon physicians, Dr. Scott Lossman and Dr. Garth Gulick.

The crux of Plaintiff's case alleges poor care received from Defendants regarding treatment of his left knee and of his Hepatitis C. The Complaint (which Plaintiff filed *pro se*) raised numerous issues with respect to the treatment he received for these conditions; however, the issues have been winnowed considerably. At this juncture, Plaintiff's allegations of deliberate indifference are twofold. First, he argues that the decision to

ORDER - 3

allow him to undergo arthroscopic surgery on his knee constituted deliberate

indifference, because the regimen of his Hepatitis C medications suppressed his immune

system and made him vulnerable to infection. Therefore, he contends that he should not

have been allowed to undergo surgery in the first place.

Plaintiff also complains of Defendants' treatment of a MRSA infection

contracted after surgery, affecting a knee joint. According to Plaintiff, the MRSA

infection was serious and life-threatening, was not discovered quickly enough, and was

not properly recognized as an emergency when it was discovered. Further, he alleges that

poor management of this infection caused him to undergo two additional debridement

procedures, and to suffer some permanent loss of mobility.

The complaint was filed in January of 2013 (after an initial review order had been

issued by the Court). (Dkt. 1). In December of 2013, the Defendants filed a partial motion

to dismiss (that was later converted into a motion for summary judgment) arguing that

Plaintiff had not properly exhausted intra-prison remedies as required by the Prison

Litigation Reform Act ("PLRA"). On August 27, 2014, the Court dismissed certain

counts on exhaustion grounds but allowed certain others to proceed. (Dkt. 43).

Thereafter, the parties conducted discovery and agreed to dismiss certain Defendants.

The remaining Defendants filed the instant motion for summary judgment on

May 20, 2016. In addition to arguing that the Plaintiff cannot establish the necessary

elements of a deliberate indifference claim, these Defendants also argue that the District

Court previously dismissed all claims related to the post-operative care of Plaintiff's

**ORDER - 4**

MRSA infection when it dismissed Count VII on exhaustion grounds. Finally, Defendants submit that all claims arising prior to January 4, 2011 must be dismissed on the basis that the Complaint was filed after expiration of applicable statute of limitation.

Judge Bush found the deliberate indifference claim related to the post-operative MRSA infection was included in Count III and such claim had been administratively exhausted by Plaintiff's grievance filed in November of 2011. Judge Bush analyzed the arguments of the parties and determined genuine issues of material fact existed regarding the treatment of the MRSA infection by Dr. Lossman. Judge Bush also recommended the claims against Corizon and Dr. Gulick could be dismissed based on a lack of evidence by Plaintiff.

## ANALYSIS OF OBJECTIONS

Dr. Lossman's objection is based on a disagreement with the Court's prior Orders and on what the medical records show regarding Dr. Lossman's involvement in the treatment of Plaintiff's MRSA infection. First, Dr. Lossman claims the MRSA deliberate indifference claim was never mentioned in any grievance filed by Plaintiff. The Court agrees with Judge Bush that Dr. Lossman is reading the grievance filed in a too restrictive manner.

The grievance filed in November 2011 states: "I have been permanently crippled by and through the negligents [sic] and poor thinking and actions by (CMS, Corizon). I have been told there is no way to fix my injuries caused by Doctor Gulick, Doctor Spelich &

**ORDER - 5**

Saint Alphonsus. My mental and physical health deteriates [sic] daily. I am in constant pain. I can no longer walk unassisted or exercise."

While it is true the grievance was not timely filed within 30 days of the incident of the MRSA infection as required by prison policies, prison officials did not deny the grievance as untimely and as discussed by the Court in its August 27, 2014 Order (Dkt. 43, pp.12-13), Defendants' answering of the grievance waived Defendants' argument that the claim had not timely filed. *See Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012); Ricardo v. Rausch, 375 F.521, 524 (7th Cir. 2004).

As to Defendants' argument the grievance does not include the MRSA allegation, the Court finds the grievance put the prison on notice regarding *all* the medical care Houser received regarding his knee and the related surgery as well as post-operative treatment. The prison and medical providers are aware the knee surgery and related complications are the reasons Houser claims he is crippled and cannot walk without assistance. Just because a prisoner does not use the legal term of "deliberate indifference" or cite specifically to the MRSA infection which led to the two additional surgeries to clean out the infection by Dr. Spelich at St. Alphonsus, Defendants were put on notice of the scope of the grievance was intended to cover the knee surgery as well as all post-operative treatment.

While it is true the grievance of November 30, 2011 does not list Dr. Lossman specifically as it does other doctors, Houser makes reference to the corporate medical providers, CMS and Corizon, and Dr. Lossman is an employee of the contracted medical provider so he is included in the grievance since he provided some medical treatment after

**ORDER - 6**

the knee surgery. Prisoners do not have to write a specific, detailed grievance if their description is adequate to put the prison officials on notice of a complaint such that it can be resolved. It would be disingenuous for Defendants to assert they did not know of the post-operative MRSA infection as source of pain and further surgeries for Houser.

In considering the earlier Orders of the Court, those orders where issued when the Court was not as familiar with the specifics of the multiple claims as it is now. The Court's intent was correctly interpreted by Judge Bush. The Court intended to dismiss the Hepatitis C causes of action, but never intended to dismiss the claim related to the post-operative treatment of Houser's knee. The MRSA infection is part of Count III, that claim was exhausted via the administrative grievance process and is not procedurally barred.

Dr. Lossman next objects to Judge Bush's conclusion that the evidence submitted by Plaintiff's expert could never be construed by a jury to rise to the level of proof of deliberate indifference on the part of Dr. Lossman. The Court respectfully disagrees with this conclusion by Dr. Lossman.

The Court agrees that the burden of persuasion is a high one for Plaintiff to establish deliberate indifference on the part of Dr. Lossman. It is clearly contested when exactly Dr. Lossman became aware of certain facts relevant to the MRSA infection and whether his treatment of Houser's infection was a mere difference in opinion about how such an infection should be treated or was so delayed that it rose to the level of being deliberately indifferent to a serious medical condition that could cause harm. This is not a legal issue, but a disputed factual issue and must be decided by a jury. The objection is overruled.

**ORDER - 7**

**MOTION IN LIMINE TO EXCLUDE DR. GINCHEREAU'S TESTIMONY**

Defendants seek to exclude Dr. Ginchereau's testimony in this matter. Judge Bush analyzed in the Report and Recommendation why some of the grounds to exclude should be granted or denied as being moot based on dismissed Defendants and certain claims. This Court agrees with Judge Bush on those parts of the motion (Sections A, C and D). The Court will address the remaining arguments of the motion to exclude based on:   1) can Dr. Ginchereau testify as to the alleged breached standards of care in a non-medical malpractice case and 2) whether or not Dr. Ginchereau can testify on the issue of whether Dr. Lossman acted with deliberate indifference in his treatment of the MRSA infection. A subpart of the second argument is whether Dr. Ginchereau has properly supplemented his expert report.

The legal standard for a deliberate indifference claim is settled law as set forth by Judge Bush on pp. 16-17 and is incorporated and adopted by this Court.

The Eighth Amendment requires adequate medical care in prison, and prison officials or prison medical providers can be held liable for Eighth Amendment violations if "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A prison official or prison medical provider acts with "deliberate indifference . . . only if the [prison official] knows of and disregards an excessive risk to inmate health and safety." *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002) (*overruled on other grounds, Castro v.*

ORDER - 8

*County of Los Angeles,* --- F.3d ---, 2016 WL 4268955 (9th Cir. 2016) (citation and internal quotation marks omitted).

In the medical context, proof of deliberate indifference requires a showing of both "a purposeful act or failure to respond to a prisoner's pain or possible medical need and . . . harm caused by the indifference." *Jett v. Penner*, 439 F.3d1091, 1096 (9th Cir. 2006). Deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104-05 (footnotes omitted). If medical personnel have been "consistently responsive to [the inmate's] medical needs," and there has been no showing that the medical personnel had "subjective knowledge and conscious disregard of a substantial risk of serious injury," there has been no Eighth Amendment violation. *Toguchi* v. *Chung*, 391 F.3d 1051, 1061 (9th Cir. 2004).

The standard for demonstrating subjective knowledge requires something more than negligence but something less than acting for the specific purpose of causing harm. That standard can be satisfied by proof of recklessness. *See Farmer v. Brennan,* 511 U.S. 825, 826 (1994) Recklessness, in turn, may be demonstrated by showing that the defendant disregards a risk of harm of which he or she is aware. *Id.*

The United States Court of Appeals for the Ninth Circuit has defined a "serious medical need" in the following ways:

**ORDER - 9**

> failure to treat a prisoner's condition [that] could result in further significant injury or the unnecessary and wanton infliction of pain; . . . [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.

*McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds*, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).

Stated another way, deliberate indifference is a different and higher legal standard than a claim for medical malpractice and there are both objective and subjective components to a finding of deliberate indifference. Plaintiff has to show Dr. Lossman disregarded an excessive risk to inmate health and safety and that he had subjective knowledge of the substantial risk to Houser's health and safety. Dr. Lossman argues Plaintiff's expert cannot testify as to Dr. Lossman's state of mind or subjective knowledge.

First, expert doctors in this case (or even Dr. Lossman) cannot testify that Dr. Lossman did nor did not act with "deliberate indifference" as that is up to the jury to determine and the term "deliberate indifference" is not a medical term that needs explanation by an expert. It would be improper to allow an expert to testify as to the ultimate question of did Dr. Lossman act with deliberate indifference as this would be little more than providing a legal conclusion and telling the jury how to decide this case. *See Woods v. Lecureux*, 110 F.3d 1215, 1220 (6th Cir. 1997). Instead, such term will be defined in the jury instructions and the jury will have to determine if Plaintiff has carried his burden to establish the elements of his claim by a preponderance of the evidence.

**ORDER - 10**

Second, while the Court agrees expert testimony regarding the standard of care is not directly relevant to the finding the jury must make, an expert must discuss the standard of care in treating a post-surgery patient in order to add context to an opinion on whether or not Dr. Lossman's care of Houser's infection rose to the level of deliberate indifference. In allowing such testimony, the Court does not intend to change the legal standard the jury must ultimately determine. "[T]o prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk' to the prisoner's health." *Toguchi*, 391 F.3d at 1058 (alteration omitted) (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)). "If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk.  *Gibson v. County of Washoe, Nevada*, 290 FF.3d 1175, 1188 (9th Cir. 2002).

Mere indifference, medical malpractice, or negligence will not support a cause of action under the Eighth Amendment. *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (per curiam). Nor does the Eighth Amendment provide a right to a specific treatment. *See Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997) ("[The plaintiff] is not entitled to demand specific care. She is not entitled to the best care possible. She is entitled to reasonable measures to meet a substantial risk of serious harm to her."). Further, a mere delay in treatment does not constitute a violation of the Eighth Amendment unless the delay causes further harm. *McGuckin*, 974 F.2d at 1060.

**ORDER - 11**

The discussion of the standard of care for treatment is relevant in order for the jury to determine whether reasonable measures were taken to meet the risk of the MRSA infection, whether MRSA is a "serious medical need," whether the course of treatment of the infection was delayed resulting in an excessive risk to Plaintiff which was known by Dr. Lossman, whether the chosen course was medically "unacceptable" under the specific circumstances presented, etc. The Court will allow some leeway regarding testimony on the standard of care to add context to Dr. Ginchereau's, as well as other doctors' testimony in this case. Such testimony will be subject to cross examination and the jury instructions will make clear what constitutes and what does not constitute deliberate indifference.

Third, as to testimony about recklessness or gross negligence, the Court finds this testimony is also potentially relevant to an expert's opinion. The medical experts could offer an opinion on the signs of subjective knowledge in this case which requires something more than negligence on the part of Dr. Lossman but something less than acting for the specific purpose of causing harm. The case law indicates that subjective knowledge can be established by proof of recklessness. *See Farmer v. Brennan,* 511 U.S. 825, 826 (1994).   Expert testimony could also include testimony on whether Dr. Lossman's subjective explanation makes sense (e.g., no doctor presented with this situation would have treated Plaintiff's infection in the manner in which it was treated). Therefore, assuming such opinions are in an expert's report, an expert may testify as to facts that establish why the expert believes Dr. Lossman was or was not reckless in his treatment of the infection; facts

**ORDER - 12**

that show Dr. Lossman had subjective knowledge of the risks of his treatment of Plaintiff; and whether Dr. Lossman ignored the risks.

Fourth, Defendants argue Dr. Ginchereau's testimony as to recklessness or gross negligence should be excluded as it was not timely disclosed. The Court finds that such opinions were disclosed to Defendants after his deposition. Defendants have had sufficient time to consider Dr. Ginchereau's supplementation since it was disclosed on January 5, 2016. While the form and timeliness of the supplementation may not rise to the level of best practices, the Court finds no prejudice to Defendants. Defendants are free to cross examine Dr. Ginchereau regarding his failure to initially include those opinions in his expert report.

For these reasons, Defendants' remaining arguments in the Motion to Exclude Dr. Ginchereau's testimony are denied.


**ORDER**

**NOW THEREFORE IT IS HEREBY ORDERED** that the Report and Recommendation (Dkt.83) shall be **INCORPORATED** by reference, **ADOPTED** in its entirety and ordered as follows:

1. Defendants' Motion for Summary Judgment (Dkt. 74) is **GRANTED IN PART AND DENIED IN PART**. Plaintiff's claims against Defendants Corizon and Garth Gulick, M.D. are **GRANTED**. Plaintiff's claim in Count III against Dr. Lossman is **DENIED**. The sole claim remaining for trial is whether Dr. Lossman

acted with deliberate indifference when it came to his role in the care of Plaintiff's post-operative MRSA infection. All other claims by Plaintiff against Dr. Lossman are **DISMISSED**.

2. Defendants' Motion in Limine (Dkt. 75) is **GRANTED IN PART; DENIED IN PART** and **DENIED AS MOOT** as set forth in this Order on Report and Recommendation.

3. The trial in this matter remains set for Tuesday, November 29, 2016. Counsel shall advise the Court of the estimated length of the trial based on the one claim that remains. The parties are advised, the Court currently has a criminal trial set to begin on Monday, November 28, 2016 which will be the first trial setting for that week. Therefore, it may be necessary for the Court to adjust this trial setting if the criminal matter proceeds.

DATED: October 27, 2016

Edward J. Lodge
United States District Judge

**ORDER - 14**